Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2893 | **DATE** | 10/12/2001 |
| **CASE TITLE** | HOI THI HUYNH vs. CHICAGO BOARD OF EDUCATION and IRENE M. DAMOTA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] DaMota's motion to dismiss [17-1] is granted in part. Count III is dismissed with prejudice. The motion to dismiss Count II is denied. DaMota shall answer the complaint by October 22, 2001. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 10/12/2001 | |
| | | 01 OCT 16 PM 6:43 | date mailed notice | |
| SB | courtroom deputy's initials | | CB | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

HOI THI HUYNH )
)
Plaintiff, ) No. 01 C 2893
)
v. ) Suzanne B. Conlon, Judge
)
CHICAGO BOARD OF EDUCATION and )
IRENE M. DAMOTA )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Hoi Thi Huynh sues Chicago Board of Education ("Board") and Irene M. DaMota for race and sex discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count I); 42 U.S.C. § 1981 (Count II); and 42 U.S.C. § 1983 (Count III). DaMota moves to dismiss Counts II and III under Fed. R. Civ. P. 12(b)(6).

### BACKGROUND

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the nonmovant. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). Huynh is a female of Vietnamese national origin, employed as a teacher by the Board at Robert Clemente Community Academy ("Clemente") since September 1986. Complaint ("Compl.") Count ("Ct.") I at ¶¶ 3-4. The Board is responsible for management and operation of Chicago schools, including Clemente. *Id.* at ¶ 2. DaMota was the principal of Clemente during the alleged incidents. *Id.* at ¶ 11.

On or about August 19, 1998, DaMota informed Huynh she would not be retained for that

1

current school year because she was a non-certified, non-appointed teacher. Huynh told DaMota that she, in fact, was a certified, tenured teacher. In response, Huynh claims DaMota stated she would not be able to teach Hispanic children, that only one Vietnamese teacher could work at Clemente, and that Huynh had an accent. Compl. Ct. II at ¶ 9 A-B. During the 1998 fall semester, Huynh did not have a permanent assignment because her position was given to a Hispanic male teacher who was not certified. She assisted or substituted for other teachers, cleaned and decorated the hallways. *Id.*

In January 1999, Huynh was assigned to teach students from a transitional school in a storage room. Huynh alleges she never received teaching supplies, although her request for supplies was approved. In June 1999, Huynh met with DaMota and requested fall semester mathematics classes. Huynh claims DaMota never responded to her request and assigned the class to a male non-Asian teacher who normally taught history. *Id.* at ¶ 9 C-D.

Huynh alleges she did not receive her assignment for the fall 1999 semester until the first day of work on August 19, 1999. On August 23, 1999, she began teaching a "skills program," although she had no experience in teaching that class. On August 30, 1999, Huynh was reassigned to teach "double demoted freshman with emotional behavior problems" even though she had no background in that area. *Id.* at ¶ 9 F. Huynh claims DaMota refused to provide a reason for her reassignment. *Id.*

Between September and December 1999, Huynh contends DaMota repeatedly subjected Huynh to unwarranted criticism of her teaching techniques, falsely accused her of not following policies and procedures, and instigated disputes with parents of Huynh's students. *Id.* at ¶ 9 G. In December 1999, DaMota advised Huynh she would meet with her to establish a remediation plan.

2

Huynh subsequently sent DaMota a letter protesting DaMota's discriminatory behavior, and complained to her union. The union initiated a grievance on her behalf. After a meeting between DaMota and the union, DaMota agreed to reassign Huynh to teach mathematics. *Id.* at ¶ 9 I-J. On January 28, 2000, DaMota informed Huynh she was assigned to a mathematics class. When Huynh expressed concern about disrupting her class by changing teachers, DaMota told Huynh she was reassigned because DaMota was unable to give Huynh an unsatisfactory rating in her present position. *Id.* at ¶ 9 K. On February 10, 2000, DaMota suggested Huynh should look for another job.

In February 2000, Huynh claims her advanced algebra/trigonometry class was incapable of solving basic algebra problems. Thus, Huynh began reviewing basic algebra with her students. On March 31, 2000, Huynh claims she was verbally attacked by DaMota and Mr. Cox, the mathematics department chair. They chastised her for teaching basic algebra, and for giving her students low grades. *Id.* at ¶ 9 O. At that meeting, Huynh was also told she was reassigned to teach basic algebra. DaMota confirmed this assignment in a memorandum, which also criticized Huynh for the poor performance of her students. As a result of these events, Huynh took medical leave from April 2000 to the end of the school year. *Id.* at ¶ 9 P-Q.

In August 2000, Huynh returned to work and realized she was not assigned classes for that semester. She alleges DaMota's continued discrimination and harassment forced her to take medical leave from October 2000 to the present. *Id.* at ¶ Q. On June 15, 2000, Huynh filed a charge with the Equal Employment Opportunity Commission ("EEOC"). Compl., Ex. A. She received a right to sue letter, and timely filed this action within 90 days.

## DISCUSSION

I. **Motion to Dismiss**

In ruling on a motion to dismiss, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Pokuta v. Trans World Airlines, Inc.*, 191 F.3d 834, 839 (7th Cir. 1999) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A claim may be dismissed only if there is no set of facts that would entitle the plaintiff to relief based on the allegations in the complaint. *Conley*, 355 U.S. at 45-46. A motion to dismiss tests the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

II. **Section 1981 claim**

DaMota contends reassignments are not actionable under § 1981. Section 1981 prohibits intentional discrimination on the basis of race or ethnicity in making or enforcing a contract. 42 U.S.C. § 1981; *Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987). To establish a § 1981 claim, Huynh must show: (1) she is a member of a racial minority; (2) DaMota intended to discriminate on the basis of race; and (3) the discrimination concerned one of the activities enumerated in the statute, *i.e.* the making or enforcing of a contract. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). A claim of employment discrimination is actionable under § 1981. *Sanghvi v. St. Catherine's Hosp., Inc.*, 258 F.3d 570 (7th Cir. 2001); *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799 (7th Cir. 1999).

It is undisputed Huynh sufficiently alleges the first two elements. However, DaMota contends Huynh's allegations of reassignments at Clemente do not concern the enforcement of a contract. In 1991, Congress amended § 1981 to overrule *Patterson v. McLean Credit Union*, 491

U.S. 164 (1989). In *Patterson*, the Supreme Court held the prior version of § 1981 did not prohibit discrimination after the initial formation of the contract. *Id.* In amending § 1981, the committee report specifically noted § 1981 now extended to "claims of harassment, discharge, *demotion*, promotion, *transfer*, retaliation and hiring." *See* H.R. 102-40(II) at 37 (emphasis added), *quoted in Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025, 1034 (7th Cir. 1998). The committee report stated that list was only illustrative and not exhaustive. *Gonzalez*, 133 F.3d at 1034. In addition, Congress added subsection (b) to § 1981, which states:

> (b) "Make and enforce contracts" defined"
> For the purpose of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of a contractual relationship.

H.R. Rep. 102-40(II), *reprinted in* 1991 U.S.C.C.A.N. 549, 730-31; 42 U.S.C. § 1981.

Huynh's allegations support a reasonable inference her reassignments constitute a transfer or demotion under § 1981. In the fall 1998 semester, Huynh was assigned as a substitute teacher after instructing regular mathematics classes for several years. Shortly thereafter, she was reassigned to teach mathematics in a storage room. In August 1999, she taught a skills program briefly before a reassignment to teach students with emotional behavior problems. The following semester she was given an advanced mathematics class. However, she was reassigned to a basic mathematics class before the school year ended. Huynh alleges employment actions of sufficient severity and frequency to state a § 1981 claim. *See Moses v. City of Evanston*, No. 96 C. 5469, 1998 WL 111568 (N.D. Ill. Mar. 11, 1998) (reassignment can constitute a demotion under § 1981). In addition, § 1981 is not limited to transfer or demotion claims but includes a broad range of employment actions. *Gonzalez*, 133 F.3d at 1034. Congress' list of employment disputes in its committee notes was not exhaustive. *Id.* Indeed, in Title VII actions, it is well-settled a reassignment can alter the terms and

5

conditions of employment to constitute an adverse employment action. *Stutler v. Ill. Dept. of Corr.*, 263 F.3d 698 (7th Cir. 2001); *Savino v. C.P. Hall Co.*, 199 F.3d 925 (7th Cir. 1999). Significantly, § 1981(b) utilizes the same "terms and conditions" language in defining enforcement of contracts.

DaMota's reliance on *Klug v. Chicago Sch. Reform Bd. of Trust*, 197 F.3d 853, 859 (7th Cir. 1999) is unavailing. *Klug* did not examine a § 1981 claim. Nor did *Klug* hold reassignment claims were inactionable under § 1981. DaMota fails to provide any additional authority in support of her motion. On a motion to dismiss, the court examines the sufficiency of the complaint only. Huynh alleges a set of facts that could entitle her to relief. Accordingly, the motion to dismiss Count II must be denied.

### III. Section 1983 claim

DaMota contends Huynh fails to allege her speech addressed a matter of public concern. To state a § 1983 First Amendment retaliation claim, Huynh must allege: (1) her conduct was constitutionally protected; and (2) her actions were a substantial or motivating factor in DaMota's alleged retaliation. *Kelly v. Municipal Courts of Marion County*, 97 F.3d 902, 911 (7th Cir. 1996). At the outset, the court must determine whether Huynh's speech "addressed a matter of public concern or a matter of private interest to the employee." *Caruso v. De Luca*, 81 F.3d 666, 670 (7th Cir. 1996). To resolve this question, the court focuses on the "content, form and context of the employee's speech." *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 140 (1983)). The public concern element is lacking where the conduct "concerns a subject of public interest but the *expression* addresses only the personal effect upon the employee." *Cliff v. Bd. of Sch. Of Comm'rs*, 42 F.3d 403, 410 (7th Cir. 1994) (emphasis added).

Huynh alleges she sent letters to parents of her students expressing concern about their level

of performance. She asked for parental assistance in improving their aptitude. Huynh sent copies of that letter to DaMota, Paul G. Vallas, Chairman of the Board, and Jean M. Bloechl, communications manager for Clemente. Compl. Ct. III at ¶ 24. In addition, Huynh sent a personal letter to Vallas addressing her concerns about her students' performance, and informing Vallas of DaMota's harassment. *Id.* at ¶ 25. Those actions do not involve speech on issues of public concern. In *Cliff*, plaintiff complained about the size of her math class and the lack of student discipline at the school. The court noted plaintiff's criticism was directed at her student's classroom performance and her inability to maintain control of the class. *Cliff*, 42 F.3d at 410-11. While the court recognized class size and discipline are of interest to the public, it held plaintiff's complaints were made for her own personal benefit. *Id.*

*Cliff* is factually analogous. Huynh was unsatisfied with her mathematics students' work. Huynh's letters to their parents was an attempt at improving student performance. Compl. Ct. III at ¶ 24. Huynh's subsequent letter to Vallas merely reiterated that concern. *Id.* at ¶ 25. Although the subject matter of Huynh's letters tangentially concern education, the expression addressed Huynh's personal interests only. *See Davis v. William Leonard Public Library*, No. 93 C 854, 1994 WL 24321, at *8 (N.D. Ill. Jan. 26, 1994) (employee's complaints about the operation of a public library do not raise an issue of public concern). Huynh does not allege she complained about the general performance of math students at Clemente or other Chicago public schools. Nor did she complain about a practice at Clemente of promoting students that fail to understand basic mathematics. Huynh's allegations are limited to expression regarding *her* mathematics students in *her* classroom. *See also Fogarthy v. City of Chicago*, No. 01 C 2157, 2001 WL 946477, at *4 (N.D. Ill. Aug. 20, 2001) (dismissing § 1983 claim where plaintiff's grievance of political affiliation discrimination was

7

a private attempt to vindicate his rights).

Likewise, Huynh's reliance on her correspondence to Vallas does not save her § 1983 claim. In that letter, Huynh outlined the discriminatory treatment she suffered personally at Clemente. Compl. Ct. III at ¶ 25. Huynh does not allege she advocated against a policy or practice of discrimination at Clemente. Instead, she expressed her dissatisfaction with DaMota's behavior. *See Collins v. Village of Woodridge*, 96 F.Supp.2d 744, 754 (N.D. Ill. 2000) (employee's complaints about gender discrimination was not for broader social cause but were criticism of obstacles to her own advancement). Individual employee disputes are not entitled to First Amendment protection. *Campbell v. Towse*, 99 F.3d 820, 827 (7th Cir. 1996). Viewing all reasonable inferences in favor of Huynh, the content of Huynh's alleged speech establishes she was not acting as a concerned citizen, but as an aggrieved employee. *See Mata v. Illinois State Police*, No. 00 C 0676, 2001 WL 292804, at *5 (N.D. Ill. Mar. 22, 2001) (dismissing § 1983 claim where employee speaks to matters on her own employment conditions). Accordingly, Count III must be dismissed.

## CONCLUSION

DaMota's motion to dismiss is granted as to Count III and denied as to Count II.

October 12, 2001

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

8