# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2893 | **DATE** | 5/28/2002 |
| **CASE TITLE** | HOI THI HUYNH vs. CHICAGO BOARD OF EDUCATION and IRENE DaMOTA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's motion to alter [75-1] or amend judgment pursuant to Federal Rule of Civil Procedure 59(e) [75-2] is denied. ENTER MEMORANDUM OPINION AND ORDER.

/s/ Suzanne B. Conlon

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 29 2002 | 80 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 5/28/2002 | |
| | | | date mailed notice | |
| CB | courtroom deputy's initials | | CB | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | | |
|---|---|---|
| HOI THI HUYNH | ) | |
| | ) | |
| Plaintiff, | ) | No. 01 C 2893 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| CHICAGO BOARD OF EDUCATION and IRENE DaMOTA | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Hoi Thi Huynh ("Huynh") sued the Chicago Board of Education ("the Board") and Irene M. DaMota ("DaMota")(collectively "defendants"), alleging race, national origin and sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, against the Board (Count I), race discrimination in violation of 42 U.S.C. § 1981 ("Section 1981") against the Board and DaMota (Count II) and retaliation for exercising her First Amendment rights in violation of 42 U.S.C. § 1983 ("Section 1983") against the Board and DaMota (Count III). On October 12, 2001, the court dismissed Count III against DaMota. *Huynh v. Chicago Board of Education*, 2001 WL 1242757 (N.D. Ill. Oct. 17, 2001). On April 1, 2002, the court granted defendants' motions for summary judgment on the remaining counts. *Huynh v. Chicago Board of Education*, 2002 WL 500560 (N.D. Ill. April 2, 2002). Huynh now moves for reconsideration pursuant to Federal Rule of Civil Procedure 59(e).



# DISCUSSION

## I. Standard of Review

Motions to reconsider are not at the disposal of parties who want to 'rehash' the same arguments. *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). A motion for reconsideration is appropriate only when:

> the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare.

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Indeed, the court's orders are not "mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy*, 123 F.R.D. at 288.

## II. Title VII and Section 1981 Claims

### A. Adverse Employment Action

In order to prove a case of discrimination or retaliation, Huynh must show she suffered a materially adverse employment action. *See Haugerud v. Amery School District*, 259 F.3d 67, 691 (7th Cir. 2001)(discrimination); *Worth v. Tyler*, 276 F.3d 249, 265 (7th Cir. 2001)(retaliation). In her response to defendants' motions for summary judgment, Huynh claimed DaMota subjected her to several adverse employment actions by: (1) assigning her to a program of skills classes rather than mathematics classes; (2) switching her homeroom assignment to a class of students with emotional behavioral problems; (3) subjecting her to unwarranted reprimands and criticisms of her job performance; (4) reassigning her to a program of advanced algebra/trigonometry classes comprised of students who lacked knowledge of pre-algebra and basic algebra; (5) instigating disputes with her

2

students' parents; (6) reassigning her to a program of algebra classes; and (7) denying her the opportunity to teach an after-school mathematics class. With the exception of the after-school mathematics class, the court determined that Huynh failed to demonstrate any material harm resulting from the challenged actions. *Huynh*, 2002 WL 500560, at *6-8. In her motion for reconsideration, Huynh rehashes the same arguments presented on summary judgment. Indeed, Huynh copied entire sections of her response to defendants' motions for summary judgment into her motion for reconsideration. *Compare* Response pp. 7-8 with Motion pp. 7-9; Response pp. 9-10 with Motion pp. 6-7; Response pp. 13-15 with Motion pp. 12-14.

Huynh first claims that she presented sufficient evidence "to support the inference that assigning a mathematics teacher to teach [skills] classes materially altered [her] responsibilities." Motion at 5. In support of her position, Huynh offers evidence that she never taught a skills course, which was outside of her area of certification, and only one other certified mathematics teacher had been assigned a full program of skills classes. Huynh Statement of Additional Facts ("Huynh Facts") ¶¶ 46-47. "[A] materially adverse change in the terms and conditions of employment must be more disruptive than . . . an alteration of job responsibilities." *Crady v. Liberty National Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir.1993). Indeed, Huynh "has not been disciplined, demoted, or terminated; has not been denied wage or employee benefit increases or been given less opportunity for such increases; and has not had her job responsibilities reduced or been made to perform more menial tasks." *See Haugerud*, 259 F.3d at 691. Absent a showing of material harm, Huynh's assignment to skills classes was not an adverse employment action.

Huynh also argues that "[t]he Court also inexplicably appears to have embraced Defendants' disputed assertions that Huynh's failure to be assigned a teaching program at the beginning of the

3

Fall 1999 semester and her subsequent assignment to Skill classes was the consequence of a mistaken belief on DaMota's part that Huynh would not be returning for the Fall 1999 semester because she thought that Huynh planned to take a leave of absence to visit her mother in Vietnam." Motion at 5-6. Contrary to Huynh's position, the court specifically noted that the reason for the skills class assignment was in dispute. *Huynh*, 2002 WL 500560, at *2. In any event, this evidence was not vital to the court's decision. Huynh failed to establish the skills assignment constituted an adverse employment action. Therefore, the court never considered whether defendants' reason for the assignment was a pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Huynh next claims that her assignment to a program of advanced algebra/trigonometry from February 2, 2000 through April 2, 2000 and subsequent reassignment to a program of algebra classes from April 3, 2000 through April 16, 2000 "substantially and materially impacted her ability to perform her job." Motion at 6-7; Huynh Facts ¶¶ 95, 148. In support of her position, Huynh claims she "had not previously taught advanced algebra/trigonometry courses, had no curriculum ready and little time to prepare one, and was unfamiliar with what topics had been covered by [her predecessor]." The Seventh Circuit has recognized that "any involuntary transfer, almost by definition, is likely to mean more work . . . for the employee who is transferred." *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996). Even so, "a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Id.* Huyhn has not offered any evidence that her assignment to teach advanced algebra/trigonometry and/or algebra classes constituted a demotion. Absent evidence of a job-related detriment, the challenged actions do not constitute an adverse employment action.

4

Nevertheless, Huynh argues that "[t]he Court also does not appear to have considered the many authorities cited by Plaintiff reflecting that Seventh Circuit has defined adverse employment actions in employment discrimination actions broadly and 'a wide variety of actions some blatant, some subtle, can qualify.'" Motion at 7, *quoting Bryson v. Chicago State University*, 96 F.3d 912, 916 (7th Cir. 1996). In all cases cited by Huynh, the Seventh Circuit has found an adverse employment action only where the plaintiff provided evidence of a job-related detriment. *See Bryson*, 96 F.3d at 916 (loss of prestige and promotional opportunities when title and committee responsibilities taken away); *Molnar v. Booth,* 229 F.3d 593, 600 (7th Cir. 2000)(loss of supplies impacted ability to perform job duties); *Johnson v. City of Fort Wayne,* 91 F.3d 922, 932-933 (7th Cir. 1996)(exclusion from essential meetings impacted ability to perform job duties); *McKenzie v. Illinois Department of Transportation,* 92 F.3d 473, 484 (7th Cir. 1996)(elimination of invoice delivery impacted ability to perform job duties); *Dahm v. Flynn,* 60 F.3d 253, 257 (7th Cir. 1994)(new job responsibilities required a dramatic downward shift in skill level); *Collins v. State of Illinois*, 830 F.2d 692, 703 (7th Cir 1987)(loss of office, telephone, business cards and listing in professional publications). Huynh's evidence does not support an inference that the assignments materially impacted her ability to do her job. Huynh's dissatisfaction with the assignments is not enough to establish an adverse job action. *See Place v. Abbott Laboratories, Inc.*, 215 F.3d 803, 810 (7th Cir. 2000)("[B]eing shifted to an essentially equivalent job that [the plaintiff] did not happen to like as much does not a Title VII claim create").

Huyhn next claims she produced sufficient evidence of a hostile work environment severe enough to constitute an adverse employment action. Specifically, Huyhn argues that "[t]he court also erred in the context of the summary judgment motion by minimizing the instances of intimidating

and confrontational conduct of DaMota during her interactions with Huynh and its traumatic impact on Huynh." Motion at 11. Contrary to Huynh's argument, the court considered this evidence in finding that Huynh perceived her work environment as hostile. *Huynh*, 2002 WL 500560, at *6. Nevertheless, Huynh was still required to prove that a reasonable person would find her work environment "hellish." *Logan v. Kautex Textron North America*, 259 F.3d 635, 641 (7th Cir. 2001). In this regard, Huynh claims "the Court erroneously omitted consideration of the financial losses that Huynh suffered as a result of the two medical leaves that resulted from the harassment that she was experiencing at work." Motion at 10-11. Although this evidence may support the court's finding that Huynh perceived her work environment as hostile, it does not prove Huynh's work environment was objectively hostile. Considering all circumstances in the light most favorable to Huynh, a reasonable jury could not define Huynh's limited contact with DaMota over a ten month period as "hellish."

## B. Similarly Situated Employees

As part of her *prima facie* case of discrimination, Huynh was required to prove that the Board gave the after-school mathematics position to someone outside her protected class. *See Von Zukerstein v. Argonne National Laboratory*, 984 F.2d 1467, 1472 (7th Cir. 1993). Huynh claims a reasonable jury could find that she was more qualified to teach the after-school mathematics class than the science teacher selected for the position. Motion at 9. Although Huynh testified that the selected individual was teaching chemistry at the time of the decision, she failed to offer any evidence of the selected individual's education, experience or qualifications. Huynh Facts ¶¶ 133-135. Without this evidence, Huynh cannot establish she was more qualified than the individual selected for the position.

## III. Section 1983 Retaliation Claim

In order to prove a § 1983 claim, Huynh was required to show: (1) her conduct was constitutionally protected; and (2) her actions were a substantial or motivating factor in the alleged retaliation. *Mt. Healthy School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). At the outset, the court must determine whether Huynh's speech is constitutionally protected public speech rather than unprotected private speech. *Caruso v. De Luca*, 81 F.3d 666, 670 (7th Cir. 1996). In her motion for reconsideration, Huynh claims her February 29, 2000 and March 2, 2000 letters addressed matters of public concern. Motion at 11-14. The court considered and rejected Huynh's argument in deciding DaMota's motion to dismiss on October 12, 2001.[1] *Huynh*, 2001 WL 1242757, at *3-4. The court considered and rejected Huynh's argument in deciding the Board's motion for summary judgment on April 1, 2002. *Huynh*, 2002 WL 1242757, at *9. The court will not revisit the issue a third time.

May 28, 2002

ENTER:

Suzanne B. Conlon
United States District Judge

---

[1] In addressing defendants' motions for summary judgment, the court stated that the motions of the Board and DaMota to dismiss were both decided on September 6, 2001. As pointed out by Huynh, the Board's motion to dismiss was decided on September 6, 2001, while DaMota's motion to dismiss was decided on October 12, 2001.

7